UNITED STATES DISTRICT COURT          SOUTHERN DISTRICT OF TEXAS

Leslie F. Joseph, §
 §
       Plaintiff, §
 §
versus §  Civil Action H-09-3873
 §
CMC Steel Fabricators, Inc., §
 §
       Defendant. §

## Opinion on Summary Judgment

1.    *Background.*

Leslie F. Joseph is black female who worked as a returns clerk for CMC Steel Fabricators, Inc. Steel hired an independent contractor, Foley Services, randomly to test its employees for drugs and alcohol. Foley tested Joseph on April 29, 2009. The results were positive for oxymorphone.

On June 10, Joseph signed an acknowledgment verifying her receipt of the most recent company drug policy, which had been implemented on January 1, 2009. The policy said that employees would be terminated for a single positive test. On June 15, Joseph was warned in writing that if she tested positive again, she would be fired.

On August 3, she was tested again. The results were positive for propoxyphene. Joseph requested a retest; the retest confirmed the positive results. Steel fired Joseph on August 13.

2.    *Adverse Impact.*

Joseph says that Steel's drug testing is facially-neutral but has an adverse impact on blacks, without explaining how that could be. Joseph says that blacks were targeted for the test and were treated differently if they tested positive. She does not dispute that the test itself is neutral, scientific, and related to the job, or that the test proscribes legal and illegal substances uniformly.

In response to Joseph's accusations, Steel produced a list of the identity, sex, and race of its employees; the identity, gender, and race of those tested; the results of those tests; and the termination and discipline records for those who tested positive. This objective data shows that none of Joseph's assertions are grounded in reality.

Out of 259 random drug tests in 2009, Foley tested 41 blacks – 15.83%. Steel has 108 African-American employees out of 743 workers – its workforce is 14.53% black. The testing selection rate of blacks is within two standard deviations of Steel's workforce ratio. Blacks are tested in proportion to their presence in Steel's workforce.

Steel also did not discriminate against blacks or Joseph by post-test discipline. In 2008 and 2009, ten employees tested positive. Seven of these employees were immediately terminated – four black men, one black woman, and two hispanic men. Three others, including Joseph, were warned that a second positive would result in termination. A white male tested positive a second time and was fired. A white female did not test positive again and was not fired. Joseph tested positive again and was fired. The same rules were applied in the same manner to all of Steel's employees.

3.   *Excuse.*

During the pre-trial conferences, Joseph said that she tested positive because she had been treated by a doctor. She had showed a doctors note to Steel after the first test, prompting Steel to keep her employed but have her tested more frequently for the next six months. This lenient response was not required by the policy. It was also generous considering the substance of the doctors note. It said only that Joseph had received an intravenous sedation with the drugs versed and fentanyl on April 10. The letter did not say that this drug would have shown up on a screen two weeks after its administration. In fact, two levels of Foley's reviewing doctors disagreed that her treatment could have resulted in a positive test on April 29. Nonetheless, Steel decided to give her a another chance by warning her that a second positive would result in termination.

Joseph tested negative in June and then tested positive in August for a different substance, propoxyphene. She showed Steel no doctors notes or documents before or after this test. Instead, she requested that her sample be retested. The retest confirmed that it was positive.

Because her excuse was discounted by professionals for the first test and she had none for the second test, Steel did not discriminate against Joseph by in its testing process or result.

4.  *Failure to Promote.*

Because failure to promote was not included in her Commission charge, it is barred here. Beyond stating she was denied promotions, the complaint does not contain a single fact about her having asked for one or having been denied. The parties' chronology shows that she received five raises. Joseph has no fact about unequal promotion.

5.  *Missing Response.*

At the second pre-trial conference, the court ordered Steel to move for summary judgment by March 26 and Joseph to respond by April 2. On March 31, Joseph's counsel asked Steel's counsel for an extension. Joseph's counsel did not file his request. Joseph did not respond by April 2 and instead asked the court for two more weeks on April 5. The court gave Joseph until April 6 to respond. Not only did she fail to respond by the court's deadline, she did not respond by the expiration of the two weeks that she had asked for, and has not filed anything since.

6.  *Conclusion.*

Because she has identified no facts that she was treated differently than other employees on account of her race and because her employer had a legitimate reason to terminate her, Leslie F. Joseph will take nothing from CMC Steel Fabricators, Inc. A hearing will be set on attorneys fees.

Signed on May 13, 2010, at Houston, Texas.

Lynn N. Hughes
United States District Judge